UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RapDev LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.: _____ |
| v. | ) |
| | ) |
| Nicholas Vecellio, Anthony Younes, and | ) |
| NoBS LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff RapDev LLC ("RapDev") brings this Complaint against Defendants Nicholas Vecellio ("Vecellio"), Anthony Younes ("Younes"), and NoBS LLC ("NoBS") and alleges as follows:

## NATURE OF THE ACTION

1. This case arises from Vecellio's and Younes's theft of trade secrets, breaches of contract, and interference with their former employer, RapDev's, customer relationships in violation of their contractual obligations, as well as obligations imposed by statute and applicable common law.

2. RapDev is a technical consulting business. Vecellio and Younes were previously employed at RapDev as a Principal Solutions Engineer and a Senior Account Executive, respectively.

3. Both Vecellio and Younes executed agreements with RapDev containing employee and customer non-solicitation covenants and restrictions against the use or disclosure of RapDev's confidential information. Notwithstanding these obligations, Vecellio and Younes stole RapDev's trade secrets and interfered with RapDev's customer and employee relationships.

DM_US 205031971-2.123690.0011

4. Vecellio's and Younes's breaches occurred while they were still employed at RapDev and owed fiduciary duties of loyalty to RapDev.

5. Vecellio and Younes now operate a directly competitive business, NoBS, and are actively soliciting RapDev's customers using RapDev's trade secret information.

6. RapDev seeks an injunction against Vecellio and Younes to cease their ongoing breaches of their non-solicitation agreements and use of RapDev's trade secrets, as well as damages stemming from their illegal conduct.

## PARTIES

7. Plaintiff RapDev is a Massachusetts limited liability company with a principal place of business in Massachusetts.

8. On information and belief, Defendant Vecellio is an individual domiciled in the state of Rhode Island.

9. On information and belief, Defendant Younes is an individual domiciled in the state of Massachusetts.

10. Defendant NoBS is a Massachusetts limited liability company with a principal place of business in Massachusetts.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action includes claims arising under the laws of the United States—specifically, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a).

12. This Court has personal jurisdiction over Vecellio because Vecellio committed conduct in Massachusetts giving rise to the claims in this action and regularly transacts business in Massachusetts for NoBS, a Massachusetts limited liability company.

13. This Court has personal jurisdiction over Younes because he executed a Separation Agreement and General Release of Claims with RapDev (the "Separation Agreement"), Section 17 of which provides that "[a]ny legal proceeding arising out of or relating to this Agreement will be instituted in a state or federal court in the Commonwealth of Massachusetts, and [Younes] and [RapDev] hereby consent to the personal and exclusive jurisdiction of such court(s)."

14. This Court has personal jurisdiction over NoBS because NoBS is domiciled in Massachusetts and regularly conducts business in Massachusetts.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Younes agreed to venue in the Commonwealth of Massachusetts in Section 17 of the Separation Agreement.

## BACKGROUND

**A.     RapDev's Business and Vecellio's and Younes's Roles.**

16. RapDev is a technical consulting business that assists its vendor, Datadog, to help its customers install and improve the performance of Datadog's cloud monitoring and security products. These customers range in size from small startups to global enterprises.

17. Through the expenditure of considerable time and resources, RapDev has established strong relationships with Datadog's key employees (including its Vice President of Sales, Director of Sales, and several members of its leadership team, including the founders), that have greatly contributed to RapDev's commercial success and uniquely positioned the company against its competitors.

18. RapDev engages customers both pre-sale (before they decide to purchase Datadog software), and post-sale (after they have purchased, and require assistance installing, Datadog software).

19. RapDev also has proprietary software built by its in-house engineers to help customers adopt Datadog more effectively. This software is a major differentiating factor for RapDev against its competitors.

20. RapDev also has several proprietary and confidential go-to-market plans and sales strategies that provide RapDev with a competitive advantage in the marketplace.

21. RapDev initially hired Vecellio in September 2021 as a DevOps Architect. He later changed roles in a lateral move to a Principal Solutions Engineer in July 2023. In this role, Vecellio wrote and developed code for RapDev's proprietary software that interfaces with Datadog's platform. Vecellio also worked to develop and maintain RapDev's client relationships and was eligible to receive commissions on any sales he brought to the company.

22. RapDev hired Younes in March 2022 as a Senior Account Executive. Younes was later promoted to Head of Sales in May 2022, before being demoted back to Senior Account Executive on October 11, 2023. In this client-facing role, Younes managed the Datadog sales team and was responsible for pitching RapDev's unique strategies to Datadog's leaders, utilizing the goodwill and relationships RapDev had already built with Datadog executives. Younes worked to develop and maintain RapDev's client relationships and received sales commissions.

23. Both Vecellio and Younes worked closely with Datadog and customers utilizing Datadog throughout their time at RapDev. Both Vecellio and Younes have intimate knowledge of RapDev's proprietary sales strategies and software utilized by said customers, giving them a competitive advantage in the market should they create a competing entity in this space.

24. In sum, Vecellio and Younes frequently interacted with RapDev's actual and prospective customers, were aware of their individual needs and past software implementation

practices, had full access to the contact information for such clients, and were intimately aware of RapDev's sales strategies.

25.  In addition to access to confidential information and customer relationships, Vecellio received a salary of $175,000 per year plus commissions as compensation for his services to RapDev. Younes, for his part, received a salary of $225,000 per year plus commissions.

**B.  Vecellio's Restrictive Covenants.**

26.  At the inception of his employment in September 2021, Vecellio executed an Employment Contract with RapDev (the "Employment Contract"). As consideration for his salary and access to confidential information and customer relationships, Vecellio agreed to certain restrictive covenants.

27.  Specifically, Vecellio agreed in Section 24 of the Employment Contract that during his employment and for a period of one year thereafter, he would not, directly or indirectly:

> a. Induce or attempt to induce any employee or contractor of the Employer to quit employment or retainer with the Employer;
> b. Otherwise interfere with or disrupt the Employer's relationship with its employees and contractors;
> c. Discuss employment opportunities or provide information about competitive employment to any of the Employer's employees or contractors; or
> d. Solicit, entice, or hire away any employee or contractor of the Employer for the purpose of an employment opportunity that is in competition with the Employer.

(Ex. 1 § 24.) This employee and contractor non-solicitation agreement is limited to "employees or contractors who were employees or contractors of the Employer during the period that the Employee was employed by the Employer." (Ex. 1 § 25.)

28.  Further, Section 26 of the Employment Contract states that during Vecellio's employment and for a period of one year thereafter, Vecellio "will not divert or attempt to divert from the Employer any business the Employer had enjoyed, solicited, or attempted to solicit, from

its customers, prior to termination or expiration, as the case may be, of the Employee's employment with the Employer." (Ex. 1 § 26.)

29. Vecellio's Employment Contract also contains promises that Vecellio will not use or disclose RapDev's trade secrets or confidential information, as defined in the agreement, and that he will return all confidential information at the end of his employment. (Ex. 1 §§ 27–40.)

30. Vecellio agreed that Massachusetts law governs the Employment Contract, and that RapDev could seek injunctive relief for a breach or threatened breach of it. (Ex. 1 at §§ 45, 50.)

**C.     Younes's Restrictive Covenants.**

31. Upon his separation from RapDev in November 2023, Younes executed a Separation Agreement and General Release of Claims with RapDev (the "Separation Agreement"). In exchange for consideration in the form of a severance payment, Younes agreed to certain restrictive covenants.

32. Specifically, Younes agreed in Section 10 of the Separation Agreement that for the twenty-four-month period following his separation from RapDev, he would not, directly or indirectly:

> (i) solicit or attempt to solicit for hire, or hire, any employee of the Company or any person who was employed by the Company within the six (6) month period immediately prior to such solicitation or hire; or (ii) solicit any consultant, contractor, collaborator, vendor or customer of the Company, with whom Employee had contact or whose identity Employee learned of as a result of employment with the Company to diminish or alter in any way its relationship with the Company. For purposes of this Agreement, a "customer" is any person or entity to which the Company has provided goods or services at any time during the period commencing six (6) months prior to Employee's employment with the Company and ending on the Separation Date.

(Ex. 2 § 10.)

33. Younes's Separation Agreement also contains promises that Younes will not use or disclose RapDev's trade secrets or confidential information, as defined in the agreement, and that

he will return all confidential information to RapDev at the end of his employment. (Ex. 2 §§ 8, 11.)

34. Younes agreed that Massachusetts law governs the Separation Agreement, that Massachusetts courts have exclusive jurisdiction over disputes arising out of the Separation Agreement, and that RapDev could seek injunctive relief for a breach or threatened breach of it. (Ex. 2 at §§ 6, 17.)

**D.     Younes Steals RapDev's Trade Secrets and Forms NoBS with Vecellio.**

35. Notwithstanding their contractual obligations, Vecellio and Younes have stolen RapDev's confidential information and are actively soliciting RapDev's customers for their new business venture, NoBS.

36. On October 2, 2023 – a short month prior to his separation from employment with RapDev – Younes downloaded a large number of files containing RapDev trade secret information that were not related to his day-to-day work at RapDev.

37. The trade secrets stolen included case studies, sales and marketing materials for RapDev's proprietary service offerings, education materials for Datadog reps, project planning and management documents, RapDev's internal policies and contract templates, and customer contracts that include customer names & contact information.

38. All of these trade secret materials are stored on a private Google Drive that requires a valid RapDev email address and password to access. Some materials are further restricted to individual users at RapDev on a need-to-know basis. RapDev also requires all employees to sign confidentiality agreements at hire to ensure the continued secrecy of their trade secrets.

39. Younes downloaded these trade secrets to his personal computer without RapDev's knowledge or consent.

40. Shortly afterward on October 30, Younes resigned from RapDev, giving the company two weeks' notice.

41. On November 6, after learning about the trade secrets Younes downloaded, two RapDev leaders confronted Younes about the unauthorized download activity. Younes claimed that he downloaded the files for use in his job at RapDev, but when asked about his intentions after leaving RapDev, Younes admitted that he was considering starting his own consulting firm. Younes alleged that he would seek out "smaller" deals than RapDev targets, though RapDev made it very clear to Younes that there was no dollar amount that RapDev would not go after and that Younes should consider any work in the Datadog space to be competitive.

42. On November 8, Younes signed the Separation Agreement. His last day at RapDev was November 10.

43. Around the same time, Vecellio also resigned from RapDev and did not inform the company of his future plans. Rather, Vecellio dishonestly claimed that he was leaving the industry entirely.

44. On January 8, 2024, RapDev discovered via a LinkedIn post that Vecellio and Younes had started a competitive consulting firm called NoBS. RapDev further discovered that NoBS had also established a partnership with Datadog, placing it in direct competition with RapDev's core offerings.

45. This further alarmed RapDev in the context of Younes's unauthorized downloads of RapDev's confidential and trade secret information, which would be directly applicable to NoBS's business and give Younes, Vecellio, and NoBS a competitive advantage in the market.

46. RapDev took swift action, promptly sending Vecellio, Younes, and NoBS a cease-and-desist letter outlining Vecellio's and Younes's ongoing obligations to RapDev and demanding that they comply. (Ex. 3.)

47. Vecellio and Younes have not done so. Instead, in flagrant breach of their obligations to RapDev, the company has been notified by several Datadog employees that NoBS has approached them to attempt to win business away from RapDev. These are employees that Vecellio and Younes were introduced to during their time at RapDev.

48. Datadog and its employees are RapDev's core customer base and the way that RapDev sources 95 percent of its business. By disrupting this relationship, NoBS has the opportunity to cut out RapDev from the market and steal its market share through improper use of RapDev's confidential and trade secret information and customer and employee relationships.

49. On information and belief, other incidents of solicitation have occurred and will continue to occur.

50. On information and belief, Vecellio and Younes will use or disclose, or have already used or disclosed, RapDev's confidential, proprietary, and trade secret business strategies in order for NoBS to interfere with RapDev's business and unfairly compete in the market.

51. As a result of the foregoing, RapDev has been and will continue to be irreparably harmed by Vecellio's, Younes's, and NoBS's unlawful competition, interference, and solicitation tactics.

## COUNT I
**(Misappropriation of Trade Secrets – Defend Trade Secrets Act Against Younes)**

52. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

53. RapDev owns various trade secrets related to how it acquires, develops, services, and retains relationships with its clients and prospective clients. These include, but are not limited to, RapDev's proprietary marketing and pitch materials that it uses to inform its strategy to obtain new business from customers.

54. The trade secrets stolen included case studies, sales and marketing materials for RapDev's proprietary service offerings, education materials for Datadog reps, project planning and management documents, RapDev's internal policies and contract templates, and customer contracts that include customer names & contact information.

55. These items have independent economic value to RapDev because they are not known to others who can obtain value from use of the information. With this information, competitors could utilize RapDev's pitch materials to obtain business for themselves using RapDev's own proprietary business strategies.

56. RapDev takes reasonable efforts to maintain the secrecy of this information. For example, RapDev utilizes confidentiality agreements with its employees which, among other things, preclude them from retaining, using, or disclosing the information contained in RapDev's trade secret materials after their departure from RapDev. RapDev also utilizes a variety of IT system and network security features to limit employee access to these items. Some materials are further restricted to individual users at RapDev on a need-to-know basis.

57. Younes stole RapDev's trade secrets by improper means by accessing and downloading RapDev documents to his personal home computer under the guise of his regular job duties for RapDev, but in reality, intended to use said trade secrets to copy RapDev's sales strategies for his competing business venture, NoBS. Younes further retained these materials in

violation of the provisions in his Separation Agreement requiring that Younes return all RapDev property upon his separation from the company.

58. Younes knew or should have known that the trade secrets were acquired by improper means because RapDev confronted him about the downloads and informed him said downloads were unauthorized, and Younes falsely claimed that the downloads were made in error.

59. Younes's actions were willful and malicious. Younes stole RapDev's trade secrets for his own financial gain and for the benefit of his new business venture.

60. Younes's actions have caused damage to RapDev because RapDev has lost control of its trade secrets and lost a competitive advantage in the market.

61. RapDev is entitled to relief and judgment against Younes in the form of damages in an amount to be proven at trial, as well as other such relief that this Court deems just and equitable.

## COUNT II
**(Misappropriation of Trade Secrets – Massachusetts Uniform Trade Secrets Act, M.G.L. c. 93, §§ 42 to 42G, Against Younes)**

62. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

63. As alleged above, RapDev owns various trade secrets related to how it acquires, develops, services, and retains relationships with its clients and prospective clients. These include, but are not limited to, RapDev's proprietary marketing and pitch materials that it uses to inform its strategy to obtain new business from customers.

64. The trade secrets stolen included case studies, sales and marketing materials for RapDev's proprietary service offerings, education materials for Datadog reps, project planning and management documents, RapDev's internal policies and contract templates, and customer contracts that include customer names & contact information.

65. These items have independent economic value to RapDev because they are not known to others who can obtain value from use of the information. With this information, competitors could utilize RapDev's pitch materials to obtain business for themselves using RapDev's own proprietary business strategies.

66. RapDev takes reasonable efforts to maintain the secrecy of this information. For example, RapDev utilizes confidentiality agreements with its employees which, among other things, preclude them from retaining, using, or disclosing the information contained in RapDev's trade secret materials after their departure from RapDev. RapDev also utilizes a variety of IT system and network security features to limit employee access to these items. Some materials are further restricted to individual users at RapDev on a need-to-know basis.

67. Younes stole RapDev's trade secrets by improper means by accessing and downloading RapDev documents to his personal home computer under the guise of his regular job duties for RapDev, but in reality, intended to use said trade secrets to copy RapDev's sales strategies for his competing business venture, NoBS. Younes further retained these materials in violation of the provisions in his Separation Agreement requiring that Younes return all RapDev property upon his separation from the company.

68. Younes knew or should have known that the trade secrets were acquired by improper means because RapDev confronted him about the downloads and informed him said downloads were unauthorized, and Younes falsely claimed that the downloads were made in error.

69. Younes's actions were willful and malicious. Younes stole RapDev's trade secrets for his own financial gain and for the benefit of his new business venture.

70. Younes's actions have caused damage to RapDev because RapDev has lost control of its trade secrets and lost a competitive advantage in the market.

71. RapDev is entitled to relief and judgment against Younes in the form of damages in an amount to be proven at trial, as well as other such relief that this Court deems just and equitable.

## COUNT III
### (Breach of Contract Against Vecellio)

72. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

73. Vecellio entered into a valid, binding, and fully enforceable contract with RapDev.

74. Vecellio entered into his contract with RapDev for good and valuable consideration, including, but not limited to, employment with RapDev; compensation; benefits; and access to RapDev's confidential information.

75. During his employment with RapDev and for a period of one year thereafter, Vecellio owes RapDev a contractual duty not to solicit RapDev employees or contractors who were employees or contractors of RapDev during the period of time Vecellio was employed by RapDev.

76. During his employment with RapDev and for a period of one year thereafter, Vecellio owes RapDev a contractual duty not to divert or attempt to divert from RapDev any business RapDev had enjoyed, solicited, or attempted to solicit, from its customers prior to the end of Vecellio's employment with RapDev.

77. During his employment with RapDev and for a period of one year thereafter (or indefinitely in the case of trade secret information), Vecellio owes RapDev a contractual duty not to use or disclose RapDev's confidential information as defined in the Employment Contract.

78. Vecellio violated his restrictive covenants by soliciting Younes to leave RapDev and form NoBS and by soliciting RapDev customers to move their business to NoBS.

79. Vecellio violated his confidentiality agreements by using RapDev's proprietary and confidential information for the benefit of himself and his new employer, NoBS.

80. As a direct and proximate result of Vecellio's breach, RapDev has suffered damages, including interference in its business operations, damage to employee relationships, and lost profits.

81. RapDev is entitled to relief and judgment against Younes in the form of damages in an amount to be proven at trial, as well as other such relief that this Court deems just and equitable.

## COUNT IV
### (Breach of Contract Against Younes)

82. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

83. Younes entered into a valid, binding, and fully enforceable contract with RapDev.

84. Younes entered into his contract with RapDev for good and valuable consideration, including severance benefits.

85. For the twenty-four-month period following Younes's separation from RapDev, Younes owes RapDev a contractual duty not to solicit or hire RapDev employees who were employees of RapDev within the six-month period immediately prior to such solicitation or hire.

86. For the twenty-four-month period following Younes's separation from RapDev, Younes owes RapDev a contractual duty not to solicit RapDev customers whose identity Younes learned of because of employment with RapDev to diminish or alter in any way their relationship with RapDev. "Customer" is limited to any person or entity to which RapDev provided goods or services to at any time during the last six months of Younes's employment.

87. Younes owes RapDev a contractual duty not to use or disclose RapDev's confidential information as defined in the Separation Agreement.

88. Younes violated his restrictive covenants by soliciting Vecellio to leave RapDev and form NoBS and by soliciting RapDev customers to move their business to NoBS.

89. Vecellio violated his confidentiality agreements by misappropriating RapDev's trade secrets, and by using RapDev's proprietary and confidential information for the benefit of himself and his new employer, NoBS.

90. As a direct and proximate result of Younes's breach, RapDev has suffered damages, including interference in its business operations, damage to employee relationships, and lost profits.

91. RapDev is entitled to relief and judgment against Younes in the form of damages in an amount to be proven at trial, as well as other such relief that this Court deems just and equitable.

## COUNT V
**(Tortious Interference with Contractual Relations Against NoBS)**

92. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

93. Vecellio and Younes entered into valid, binding, and fully enforceable contracts with RapDev.

94. NoBS knew or should have known that Vecellio and Younes entered into said contracts as Vecellio and Younes are the co-founders, owners, and managers of NoBS.

95. NoBS knowingly induced Vecellio and Younes to breach their contractual obligations to RapDev by employing Vecellio and Younes to compete for RapDev's customers and utilize RapDev's confidential and trade secret information to do so.

96. NoBS's intentional interference with Vecellio's and Younes's contracts with RapDev was improper in motive and means as NoBS sought to interfere solely for its own economic gain to the detriment of RapDev and utilized RapDev's misappropriated trade secrets to do so.

97. As a direct and proximate result of NoBS's conduct, RapDev has suffered damages, including interference in its business operations, damage to employee relationships, and lost profits.

98. RapDev is entitled to relief and judgment against NoBS in the form of damages in an amount to be proven at trial, as well as other such relief that this Court deems just and equitable.

## COUNT VI
### (Injunctive Relief)

99. RapDev repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

100. As a proximate and foreseeable result of Vecellio's and Younes's breaches of their contractual obligations, RapDev has suffered and will continue to suffer irreparable harm.

101. These restrictive covenants are essential to RapDev's ability to protect and preserve its legitimate business interests, including goodwill, confidential and proprietary information, and business and employee relationships.

102. Once these business interests have been disrupted, there is little to no chance of restoring them.

103. RapDev has no adequate remedy at law for the loss of its invaluable business relationships or customer goodwill.

104. The balance of the equities favors the entry of an injunction requiring Vecellio and Younes to abide by the restrictive covenants in their contracts with RapDev.

**PRAYER FOR RELIEF**

WHEREFORE, RapDev respectfully requests the following relief:

a.  An award of damages (compensatory, exemplary, or otherwise) in an amount to be determined at trial to RapDev for Younes's misappropriation of RapDev's trade secrets under the Defend Trade Secrets Act and the Massachusetts Trade Secrets Act;

b.  An award of damages to RapDev for Vecellio's and Younes's breaches of their contractual obligations to RapDev;

c.  An award of damages to RapDev for Vecellio's and Younes's breaches of their fiduciary duties owed to RapDev;

d.  Injunctive relief enjoining Vecellio and Younes from violating the restrictive covenants in their contracts with RapDev;

e.  Injunctive relief enjoining Vecellio, Younes, and NoBS from using or disclosing RapDev's trade secrets in violation of the Defend Trade Secrets Act and the Massachusetts Trade Secrets Act;

f.  An award of attorneys' fees, interest, costs, and expenses incurred by RapDev as a result of the action under the Defend Trade Secrets Act and the Massachusetts Trade Secrets Act; and

g.  Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By:   */s/ Jim Nicholas*
    Jim Nicholas (BBO No. 653892)
    Annabel Rodriguez (BBO No. 696001)
    **MCDERMOTT WILL & EMERY LLP**
    200 Clarendon Street
    Boston, MA 02116
    Tele: +1 617 535 4000
    Fax: +1 617 535 3800
    jnicholas@mwe.com
    anrodriguez@mwe.com

    *Attorneys for Plaintiff*
    *RapDev LLC*

Dated: April 29, 2023